Good morning, Your Honors. Doug Keller on behalf of Mr. Moreno-Nevarez. This case is materially indistinguishable from Franklin, where this court found Doyle error. In this case, after Mr. Moreno was arrested, he was Mirandized and told he had a right to remain silent, a right he then unequivocally invoked in a court filing. Subsequent to that, he had a telephone conversation with his daughter, a conversation he knew the government was monitoring, meaning he knew the government was right over his shoulder listening to everything he said. When his daughter accused him of knowingly smuggling drugs, he didn't dispute the accusation. Instead, he exclaimed his daughter's name, and they both moved on to other topics of conversation. Now, those facts make this case more or less identical to what happened in Franklin when this court found Doyle error adopting the lower court's decision. The only distinction the government's drawn between these two cases is that in Franklin, after the defendant's daughter made this accusation, he pointed to a sign that said, communications may be monitored. So he responded inaudibly instead of audibly saying, communications may be monitored. But that, of course, is a distinction without a difference. There's no reason to draw a distinction between inaudible and audible responses. I think what the government's doing in these cases, it is holding against defendants their failure to dispute the accusation. That is, holding against them what they didn't say. That is, the right to remain silent, even though they were told they do have a right to remain silent. And in many of these adoptive admission in Doyle cases, the defendant doesn't literally stay silent. In fact, in Doyle itself, the defendant didn't actually stay silent. When he was questioned by police, he made some comments, but he never gave an explanation for his seemingly criminal conduct. Then at trial, the government tried to impeach him on his failure to have told the police officer on the scene his story. In other words, when we talk about silence in Doyle, we're really talking about what he didn't say after he was Mirandized. Moreover, not only is there Doyle error here, this is an adoptive admission. Did the trial court make a finding that this was an adoptive admission? Well, yes. Or did it leave it to the jury? Yes. There was a discussion pre-trial about the issue, and the court essentially said it would reserve on the issue. And then when it came up at trial, he said it was admissible. So necessarily, he must have thought if he bought the government's argument, it was an adoptive admission and there was no Doyle error. Did he say there was no adoptive admission, or did he just say it was admissible? He just said it was admissible. Then why are you saying, yes, he said it was an adoptive admission? If you read the record in the light most favorable to the district court, you could view it having done that in light of the pre-trial comments. But I think at the end of the day, it doesn't really matter what the court said. Well, you may think it doesn't matter, but some other people may think it does matter. Yes. Like, I think it matters whether there was a finding. I mean, if you want to waive that, you're perfectly free to do it. I certainly don't want to waive it. All I'm trying to perhaps inarticulately say is, from my perspective, it doesn't matter, only because even if you had said your perspective doesn't really matter, does it? It does not matter, Your Honor. Okay. So we're interested in whether he made a finding. And you may not be, but I think we would like to know whether he made a finding, and that may affect our view of the case. He never said he admitted as an adoptive admission. All he said is it's admissible and the case moved along. Well, obviously he wouldn't admit it if he didn't think it was admissible. Yes. But we don't know why he thought it was admissible. Or maybe he was leaving the question of adoptive admission to the jury, and was that the proper thing to do? Could you repeat that, Your Honor? Either. I mean, he didn't explain. So he could have decided he was leaving the question to the jury to decide whether Mr. Martinez had adopted his daughter's statement. Yes, that's possible. But we don't know. We don't know. Which it is. That's one of the problems with this. I agree, Your Honor. Are there potentially 403 problems? There are. I agree. We didn't raise those objections, but absolutely. Especially when you viewed in light of the fact that closing, the government argued not only was the statement a confession of Mr. Moreno, they said this was essentially a confession of his daughter, so his own daughter knew he was guilty, which, of course, made the comment all the more powerful and all the more prejudicial,  with this admission. So the government's, I think, fallback argument is that this is harmless, but I don't think that can possibly be. Because the government presented this as a full confession at closing, we know from the Supreme Court's decision in Arizona v. Fulamonte that the erroneous admission of full confessions are invariably not harmless. And, in fact, that's why, again, the prosecutor called this powerful evidence of guilt. Well, the prosecutor said, obviously, the call is strong evidence of your client's guilt and its impact on the jury will be powerful. Absolutely. So they can't argue it was harmless now if it was there. I agree, Your Honor. The Court has no other questions I'm happy to submit. Thank you, counsel. Good morning again. May it please the Court, Mark Rahe for the United States. Your Honor, the government's position is that the district court properly admitted this evidence below. Now, it's true. If you look in the record, you will not find the court expressly stating in as many words that I find this is an adoptive admission. When you look at supplemental excerpts of record 95 to 109, that is the hearing before the morning of trial, that's where the parties were discussing this issue. Now, most of the discussion was about Doyle, but our position would be the only reasonable inference in this record is that the court also found it to be an adoptive admission because that was the theory that the government squarely put before it, and that was the theory that the defense squarely objected. And I particularly point to supplemental excerpt of record 102. The prosecutor at the bottom of that page says, the government's position is he says Cynthia because he wants her to stop talking because he knows that she's admitting facts that go to his knowledge of the crime. He's attempting to frustrate her admissions and thereby adopting them. Cynthia, that is true, but they're recording this, and that actually goes to the top of SCR 103. Now, sure, it would make sense, but if you look at the comment Cynthia, you could look at it and say we need to look at the context in which it was said to determine whether it's an adoptive admission. Let's say you look at the context and you say, well, you could argue that, so maybe the jury ought to make the decision. Don't you run to 403 problems in giving that to the jury because it is overwhelmingly prejudicial because it's essentially an admission of guilt if that's how you look at it? Actually, to that, Your Honor, I would say, and I know Judge Wardlaw brought this up, that's exactly what the district court has to do. What the law says is that under 104B, the district court, and this is at Gill 58F3rd at 1419, initially the district court need only find that sufficient foundational facts have been introduced for the jury reasonably to conclude that the defendant did actually hear, understand, and accede to the statement. So that's basically three requirements. There was never any dispute here that the defendant heard it and that he understood it, and then, yes, there is ambiguity about the response. But all of the authorities that I'm aware of, in fact, I know we cite in a more brief, Weinstein's federal evidence has a section titled ambiguous response. Here's a direct quote. When a party's response to a statement is less than clear, the meaning of the response usually creates a question for the trier of fact. Now, as far as 403 concerns, not only were they never, that objection was never interposed below. If there's one thing I want to leave the Court with, you know, if it seems like this was all some sort of one-sided unfair evidentiary ruling, that is entirely not the case. The defense was able to actively oppose the inference that we sought. Not only did they call Cynthia to the stand, they had her testify, oh, that was just my father scolding me. That's not what he meant. I didn't know anything about the car. I have no knowledge of the facts. So they were able to counter it that way. In addition, they were able to adduce one of their own calls. It was from May of 2013, where the defendant had no problem saying, you know, my lawyers are fighting this case, I'm innocent, and they argued in closing that, you know, it is ambiguous and therefore you should consider our take on it. So in the end, I mean, the way I read the law, this is exactly what the district court is supposed to do. And in fact, besides just the treatise that I cited earlier, two cases from this court, again, both cited in my briefs, one of them is Geese, 597F2nd at 1195 and 1196, there, this Court realized that there was contradictory evidence as to whether the defendant admitted the statement and they held it was proper to go to the jury. Another case is Sears. Ginsburg. I think what I find troubling is the transcript of the hearing. It was all about Doyle and about allowing in a statement that was made after Miranda rights, and those were the cases the Court was discussing. And, I mean, I personally, for me, speaking for me, I don't think Doyle really applies. I think the real question is whether this was an adoptive admission, and really that transcript doesn't tell you the basis for his ruling. Now, maybe he was saying it was admissible under Doyle. And he even said at the time of the hearing he hadn't read all the other cases. He was just thinking of Doyle and Duncan and Doyle. Right, well, and when he said he hadn't read all the cases, those were all of the government's cases, most of which were persuasive or out of circuit, which said Doyle shouldn't even apply in the first place. Right, right. And I think I can see, I can understand that because of the, so, but still, how do we know he wasn't even thinking, I mean, for all we know, he wasn't even thinking of adoptive admissions when he let it in. You know, objectively, I don't know that that's fair to the district court. District courts are presumed to know the law. Here, the parties, both of their briefing, which the district court said that it read, talked first about the adoptive admissions, that's the nonconstitutional issue, and then they hit Doyle second. The briefs talked about it. Yes. Okay, so. And then, you know, when the prosecutor says, and again, it's supplemental to Excerpt of Record 102, I mean, realize, too, this is just, I think this was the morning of trial. This was only, the motion to exclude was only raised like three days before. I think the government's had its response the day before, but again, we're on abusive discretion review. I think it's a fair reading from the record. It's not like the words adoptive admission never came up at that hearing or that they were never briefed. In fact, the opposite of both of those propositions is true. Okay, so, okay, so, explain to me how Mr. Martinez's one-word response, and I've listened to the tape. I heard it. He says, Cynthia, like, shut up. How does that adopt the substance of her statement? Detone the circumstances. It's a reasonable reading that he's basically saying, Cynthia, don't talk about that. That's bad for my case. That's at least one plausible reading. But does that go to the jury or the judge? It goes to the judge for preliminary determination, but then it goes to the jury. Again, I cited a Gill case earlier. This is a short quote, 58-F-30, 1420. District court is not supposed to weigh the evidence and decide whether the foundational showing is strong or weak. In Weinstein's Federal Review. But the judge is supposed to find whether or not it's adequate to support the conclusion. And as long as it's plausible. I mean, here, you know. Adequate. Sufficiently adequate. Right. And if, you know, in another case where it uses the word reasonably conclude, I mean, when you think about this, it's almost like the situation, ubiquitous in American experience, a teenager, his parents meet his boyfriend or girlfriend for the first time, and the parents start talking about something embarrassing that happened, you know, something that they didn't want to hear about. And the first thing the child says is mom or dad. That's at least an arguable. This is what this touches on. This is why, you know, there's not really much case law from this circuit. Mom or dad means it's embarrassing to him. It doesn't mean that what you're saying is correct. No, but it's at least an arguable position, isn't it? And isn't the point of the law, the court says, I mean, if Gill says you're not supposed to weigh the evidence and decide whether the showing is strong or weak, here, there's no question he heard it. There's no question. Is the evidence such as to support a conviction? To support a finding beyond a reasonable doubt? Well, it wasn't the only evidence we had, Your Honor. It was enough to bring it into court. And as I pointed out earlier, the defense wasn't, you know, a silent bystander  They actively were able to oppose this. They called the daughter to the stand. They introduced other calls. They made their pitch to the jury. We made ours. Isn't that how the system's supposed to work? That's what cases like Gill tell us. Sears, 663, fed second at 904, 905. Because we find it was error to admit this statement as an adoptive admission, would you argue that it was harmless? Or what's the next step in the argument? Well, that is normally the position. And I submitted my briefing. I understand Your Honor's position. It's not the strongest argument. I'm just covering my bases. I understand they asked for a jury note. I can't deny that. But, you know, it wasn't the only evidence. He's driver-safe. And that's the thing that troubles me about some of these cases. It wasn't the only evidence. I mean, you know, you probably could have gotten him convicted without the tape. Well, you know, hindsight's always clear, Your Honor. I haven't been a trial lawyer in 12 years. But, boy, I remember when I was, we had so many cases that were 11 to 1. People didn't want to deliberate. They watched CSI too much. Oh, the government doesn't have DNA. You know, this was something that we thought had value. It just has to satisfy the relevance. We put it before the court. Both parties were able to argue it equally. Well, it has to satisfy the roles of evidence. I mean, that's the judge's job, right? Correct. And, you know, here you look. Again, it's an abuse of discretion standard. Gill says that you only need to find that they actually heard, understood, and exceeded two of those three requirements not disputed. And it's an arguable, even Weinstein says, when a party's response is less than clear, the meaning usually creates a question for the trier of fact. If anything, you know, they say they want to equate this with the complete confession. This isn't a case where the defendant said, boy, I'm guilty, I knew there were drugs. This was almost gold for them. They could say, wow, ladies and gentlemen, the jury, the government just relies on this one word. Well, let me go over the evidence with you, which is exactly what they did. The daughter took the stand. She told you that he was just scolding her. Even though he signed a pro forma invocation of rights, he had no problem having 66 phone calls with his daughter, no problem talking about this case whatsoever. I mean, Doyle, I know my opponent talked about Doyle. That was where, even at the end of the opinion, it says, you know, silence at the time of arrest. This was two months later. This defendant had no trouble talking about this case. This case, wasn't this a factor that you're, that the prosecutor emphasized and that the jury asked to have it replayed twice? It was a prominent part of the prosecution's case. It wasn't just something additional that you threw in. I mean, you were trying to use this as an admission of guilt. Absolutely. And it was an important part of the case. And it was one of many. We didn't know what the jury would ask a question on. They asked a question about this. But that's why I said the minute Judge Wardlaw asked me. Did he call you in to discuss the jury's question in this one? No. I don't think there were any issues on this case. Okay. So there weren't, there wasn't questions during deliberations in this one. Okay. They got the read back that they wanted. But, again, you know, this court, it sounds like you might not think it's fair, but looking at the law, looking at treatises, Gil says that the courts are not supposed to weigh the evidence or decide whether the foundational showing is strong or weak. Here, both sides were able to litigate this fairly and fully. And on an abuse of discretion review, which is highly definitional. Litigate it fully and fairly, even if the judge didn't say anything. Even if the judge didn't make any finding, they could litigate it. But that's not enough. Well, all that needs to be enough is that it satisfies abuse of discretion review, Your Honor. I'm trying to speak to the overall fairness concerns that I feel are coming from the panel. Again, this isn't something that we snuck in, that we were the only party that had evidence about. They called the daughter. She testified at length. They induced a contrary recording. They said our client has no trouble asserting his innocence. His lawyers are fighting the case. And this is not a defendant who wanted to be silent about this case with 66 phone calls between him and his daughter. That there was that number when he was in jail all that time and he wanted to talk to his family, I don't see any problem. That's irrelevant to this discussion. I mean, the question is, I mean, I think the question is who should make this decision, whether they should have gone to the jury at all. And all I can say, again, Your Honor, Gill, Sears, Gies, Weinstein, a very respected treatise. When a party's response is less than clear, the meaning usually creates a question for the trier fact. Sears published case 663F second at 904, 905. The panel of this Court that said, quote, there's conflicting evidence, end quote, it was still proper to go to the jury. All I can say is those are the cases, those are the ones I've cited. This was not an unfair trial. Parties were able to litigate fairly. Unless the Court has any further questions, the government would submit. Okay. Thank you very much, counsel. Just three points, Your Honor. First, the preliminary question, the point the government is missing is this Court has never said that as long as a statement is ambiguous, it can go to the jury for them to decide whether to adopt an admission. In every single case the government cites, the preliminary question is, and I'll quote from Sears, one of the cases the government just mentioned. Before admitting a statement as admission by acquiescence, the district court must determine as a preliminary question whether under the circumstance an innocent defendant would normally be induced to respond. The point in all these cases, it's a question of not whether you can interpret the defendant's statement in some way consistent with an adoption. The question is always, would you expect a defendant to dispute the accusation? That's true even in cases in which the defendant responds ambiguously. So that's cases like Henke. That's cases like Brown. In both those cases, in Monks, the defendant responded ambiguously, and this Court didn't say, well, you could rationally interpret that statement as agreeing with the accusation. Instead, the Court always asks itself the preliminary question. Would you expect an innocent defendant to dispute that accusation? And that's the standard we want the Court to apply here and the standard the district court never applied. But if the answer to that is maybe? Then it's inadmissible because the government bears the burden to prove this statement is admissible. And here the answer isn't maybe because of the fact that Mr. Moreno's attorney told him not to discuss the case with anyone and because it came after Miranda. And I also think just practically speaking, you put defendants in an impossible position if anything they said in the presence of an accusation could be used against them unless they expressly and unequivocally dispute the accusation. You know, if a defendant is in with his cellmate and the cellmate asks him, are you guilty of this offense, unless he finds the right magical combination of words, the government could always argue that, well, that statement was And the government referred to this statement as, quote, gold for the defense. Well, that's certainly not the case. What the government was able to do here was allow the jury to hear that the client's own daughter thought he was guilty. That's certainly something we don't want to come out at trial. It's certainly not, quote, gold. It's to the contrary. If the Court has no further questions, I'll submit. Thank you, Kevin. The case is arguably submitted.
judges: Reinhardt, Wardlaw, Whyte